# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | | |
|---|---|---|
| BRIAN VALENTI, on his own behalf | ) | |
| and on behalf of a class of those similarly | ) | |
| situated, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO: 1:15-CV-63-TLS |
| | ) | |
| HARTFORD CITY, INDIANA, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

The Plaintiff, Brian Valenti, on behalf of himself and others similarly situated, has sued

the City of Hartford City, Indiana. (*See* Class Action Compl. for Injunctive and Declaratory

Relief and Individual Compl. for Damages, ECF No. 1.) The Plaintiff asserts that Hartford City

Ordinance 2008-01, titled "Regulation of Sex Offenders," as amended by Ordinance 2015-10

(Amended Ordinance 2008-01 or the Ordinance), is unconstitutionally vague in violation of the

Due Process Clause of the Fourteenth Amendment, and violates the Indiana Constitution's

prohibition against ex post facto punishment. For the due process challenge, the Court has

certified a class pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(2). (*See* Order, ECF

No. 43.) The class includes all persons who currently, or will in the future, live in, work in, or

visit Hartford City, Indiana, and who are, or will be, sex offenders as defined in Amended

Ordinance 2008-01. The relief sought for the class is injunctive and declaratory.[1] The Plaintiff

also seeks damages on his own behalf.

---

[1] Although the Plaintiff originally requested certification of a sub-class for persons who
committed their qualifying sex offense prior to February 4, 2008 (the effective date of the Ordinance),
this request has been withdrawn.

The Plaintiff has moved for Partial Summary Judgment [ECF No. 34] as to liability. The

Defendant responded by filing a Cross-Motion for Summary Judgment [ECF No. 37]. For the

reasons stated herein, the Court grants in part and denies in part the Plaintiff's Motion for Partial

Summary Judgment [ECF No. 34], and grants in part and denies in part the Defendant's Cross-

Motion for Summary Judgment [ECF No. 37].


## STATEMENT OF FACTS

**A.      Sex Offender Ordinance**

Ordinance 2008-1, Regulation of Sex Offenders, went into effect in Hartford City on

February 4, 2008. It applies to any "Sex Offender," defined in the Ordinance as "an individual

who has been convicted of or placed on deferred adjudication for a sexual offense involving a

person under eighteen (18) years of age for which the individual is required to register as a sex

offender under Indiana law IC-35-42-4 and IC-11-8-8." Hartford City, Ind., Ordinance 2008-1,

§ 8.50.2 (2008). A Sex Offender violates the Ordinance if he or she knowingly enters a "Child

Safety Zone." *Id.* § 8.50.3.B. Child Safety Zones include:

> public parks, private and public schools, public library, amusement arcades, video
> arcades, indoor and outdoor amusement centers, amusement parks, public or
> commercial and semi-private swimming pools, child care facility, child care
> institution, public or private athletic complexes, crisis center or shelter, skate park
> or rink, public or private youth center, movie theatre, bowling alley, scouting
> facilities, and Office of Protective Services.

*Id.* § 8.50.2. It is also an offense under the Ordinance for a Sex Offender to "knowingly loiter on

a public way within 300 feet of a Child Safety Zone." *Id.* § 8.50.3.C. A "public way" is "any

place to which the public or a substantial group of the public has access and includes, but [is] not

limited to, streets, shopping centers, parking lots, transportation centers, restaurants, shops and

similar areas that are open to the use of the public." *Id.* § 8.50.2.

When the Ordinance was first enacted in February 2008, the term "loiter" was defined as "standing, sitting idly, whether or not the person is in a vehicle or remaining in or around an area." *Id.* After the Plaintiff initiated this litigation, Hartford City amended Ordinance 2008-01 to replace that definition of "loiter" with the following:

> Loiter: means remaining in a place or circulating around a place under circumstances that would warrant a reasonable person to believe that the primary purpose or effect of the behavior is to enable a sex offender to satisfy an unlawful sexual desire, or to locate, lure, or harass a potential victim.

*Id.* § 8.50.2, as amended by Hartford City, Ind., Ordinance 2015-10 (2015).

The penalty for violating the Ordinance is a fine of up to $200 for each offense. *Id.* § 8.50.6.

**B.      The Plaintiff**

The Plaintiff moved to Hartford City in 2014 with his wife and minor child. In 1993, the Plaintiff was convicted in California of a sex offense involving a child under the age of 14, and is therefore required to register as a sex offender under Indiana law. Shortly after he moved to Hartford City, a member of the police department informed the Plaintiff about the Ordinance.

The Plaintiff alleges that the Ordinance has caused him to significantly curtail his activities in Hartford City, including going to the library with his child, entering his child's school, going to Hartford City parks, bowling with his family, attending church where there are separate youth services, joining the YMCA, having his child participate in YMCA activities, and voting at his designated polling place. The Plaintiff maintains that when he lived in California, he would frequently go to his child's school to work with staff there because his child has

3

learning disabilities, but that he is now unable to do so and his child has suffered because of this. Referring to the original definition, the Plaintiff asserts that he does not know what loiter means, nor does he know all the locations where it would be impermissible for him to loiter. He alleges that the restriction is burdensome, as he cannot wait in the parking lot of places where his child may go bowling or participate in or attend sporting events. In fact, the Plaintiff received a citation from the Hartford Police Department when he was a passenger in his brother's car, which was parked at his brother's house across the street from a school. He was waiting to be taken to pick up his own child from another school.

The Plaintiff asserts that the revised definition of loiter remains unclear and causes him uncertainty. He questions whether driving by a park three or four times in the course of running errands would be considered "circulating around a place." He also complains that the definition does not depend on what he is doing, but on how others might perceive it.

## ANALYSIS

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A court should only deny a motion for summary judgment when the nonmoving party presents admissible evidence that creates a genuine issue of material fact. *Luster v. Ill. Dep't of Corrs.*, 652 F.3d 726, 731 (7th Cir. 2011) (first citing *United States v. 5443 Suffield Terrace*, 607 F.3d 504, 510 (7th Cir. 2010); then citing *Swearnigen–El v. Cook Cnty. Sheriff's Dep't*, 602 F.3d 852, 859 (7th Cir. 2010)).

**A.     Ex Post Facto Punishment**

The Plaintiff alleges that the Ordinance, as applied to him, violates the Indiana Constitution's prohibition against ex post facto punishment. He requests that the Court find that the Defendant is liable on this issue, and conduct a trial to determine his damages. The Defendant disagrees that the Ordinance retroactively punishes the Plaintiff, and requests summary judgment in its favor.

The Indiana Constitution provides that "[n]o ex post facto law . . . shall ever be passed." Ind. Const. art. I, § 24. "The underlying purpose of the Ex Post Facto Clause is to give effect to the fundamental principle that persons have a right to fair warning of that conduct which will give rise to criminal penalties." *Wallace v. State*, 905 N.E.2d 371, 377 (Ind. 2009) (citing *Armstrong v. State*, 848 N.E.2d 1088, 1093 (Ind. 2006)).

In *Wallace*, the Indiana Supreme Court confronted an ex post facto challenge to the Indiana Sex Offender Registration Act (SORA), as brought by a defendant who had been charged and convicted with a sex offense and had served his sentence prior to the enactment of the statute. 905 N.E.2d at 373. In determining that the Act, as applied to the defendant, violated Indiana's ex post facto clause, the court adopted the "intents-effect" test, as articulated by the United States Supreme Court in *Smith v. Doe*, 538 U.S. 84 (2003) (upholding the constitutionality of Alaska's Sex Offender Registration Act). *Wallace*, 905 N.E.2d at 378; *see also Tyson v. State*, 51 N.E.3d 88, 93 (Ind. 2016) (noting the Indiana Supreme Court's adoption of "the Supreme Court's intent-effects test as the proper vehicle for analyzing whether [sex offender registration] statute[s] impose[] a punishment—which cannot be done retroactively pursuant to our Ex Post Facto Clause—or whether the statute[s] [were] merely part of a

non-punitive, regulatory scheme"). Under the intents-effects test, "a court first determines whether the legislature meant the statute to establish civil proceedings. If the intention of the legislature was to impose punishment, then that ends the inquiry, because punishment results." *Id.* at 378 (citing *Smith*, 538 U.S. at 92). "If, however, the court concludes that the legislature intended a non-punitive regulatory scheme, then the court must further examine whether the statutory scheme is so punitive in effect as to negate that intention thereby transforming what had been intended as a civil regulatory scheme into a criminal penalty." *Id.* at 378 (citing *Smith*, 538 U.S. at 92).

Here, there is no dispute that the Defendant committed his criminal offense well before the Ordinance was enacted. Additionally, the parties do not dispute that the Ordinance was intended to advance a non-punitive purpose: public safety. The sole issue, then, is whether the Ordinance, as applied to the Defendant, is so punitive in effect that it has been transformed into a criminal penalty despite its regulatory intent.

### 1.    *Effects Test*

As instructed by the Indiana Supreme Court in *Wallace*, when determining the "effects" of a regulatory scheme, the Court must weigh seven-factors:

> "[1] Whether the sanction involves an affirmative disability or restraint, [2] whether it has historically been regarded as a punishment, [3] whether it comes into play only on a finding of scienter, [4] whether its operation will promote the traditional aims of punishment—retribution and deterrence, [5] whether the behavior to which it applies is already a crime, [6] whether an alternative purpose to which it may rationally be connected is assignable for it, and [7] whether it appears excessive in relation to the alternative purpose assigned."

*Id.* at 379 (quoting *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168–69 (1963)) (footnotes

omitted). No one factor is determinative. *Id.*

Notably, following the *Wallace* decision, the Indiana Court of Appeals decided *Dowdell v. City of Jeffersonville*, a case involving an ex post facto challenge to a city ordinance that prohibited convicted sex offenders from entering public parks. 907 N.E.2d 559, 562 (Ind. Ct. App. 2009). After weighing the seven factors, the court concluded that the ordinance, as applied to Dowdell, violated Indiana's ex post facto clause because "it imposes burdens that have the effect of adding punishment beyond that which could have been imposed when [Dowdell's] crime was committed." *Id.* at 571.

The Defendant attempts to undercut the significance of *Dowdell* by pointing to *Doe v. Town of Plainfield*, 893 N.E.2d 1124 (Ind. Ct. App. 2008), a pre-*Wallace* decision in which the court of appeals found that a statute prohibiting sex offenders from entering public parks does not violate Indiana's ex-post facto clause. Although *Town of Plainfield* was decided prior to *Wallace*, the Defendant argues that the reasoning of *Town of Plainfield* remains applicable because the Indiana Supreme Court denied transfer on August 20, 2009, *see Doe v. Town of Plainfield*, 919 N.E.2d 549 (Ind. 2009), even though *Wallace* had already been decided. But as correctly noted by the Plaintiff, Rule 58(b) of the Indiana Rules of Appellate Procedure provides that "[t]he denial of a Petition to transfer shall have no legal effect other than to terminate the litigation between the parties in the Supreme Court." Accordingly, this Court does not consider the denial of transfer as indicating agreement with the *Town of Plainfield* decision and, when applying the seven-factors, places limited significance on *Town of Plainfield*. *See Dowdell*, 907 N.E.2d at 569 (noting that *Town of Plainfield* was decided "without the benefit of *Wallace*").

On the same day it issued *Wallace*, the Indiana Supreme Court issued *Jensen v. State*,

905 N.E.2d 384 (Ind. 2009), which also involved an ex post facto challenge to SORA. Unlike Wallace, who had served his sentence prior to the enactment of SORA, Jensen committed his offense after the legislature enacted SORA. Therefore, he challenged an expansion to SORA that required him to register as a sex offender for life, as opposed to the previously-enacted registration period of ten years. *Id.* at 389–90. The court concluded that SORA, as applied to Jensen, does not violate Indiana's ex post facto clause. *Id.* at 394. First, the court noted that the 2006 amendments had changed the duration of the registration requirements that already applied to Jensen upon his conviction, but had changed nothing else with regard to Jensen's actual disclosure requirements. 905 N.E.2d at 394. Second, Jensen, unlike Wallace, would be able to petition the court after ten years for reconsideration of his status as a sexually violent predator. *Id.*

The Defendant attempts to distinguish *Wallace* and *Dowdell* by characterizing the Plaintiff as a *Jensen* sex offender, as opposed to a *Wallace* sex offender. The Defendant contends that the Plaintiff is like Jensen because he was already required to register as a sex offender when the Ordinance was passed. While that may be true, he was not prohibited from entering Hartford City Child Safety Zones or loitering near those areas by virtue of that registration. Those restrictions first came about in 2008 when the Ordinance was passed. Were this case about extending the duration of existing registration requirements, the Court might grant the Defendant's point. However, in the context of this case and the Plaintiff's ex post facto claim, *Jensen* is not an applicable case.

The Court now turns to the seven-factor effects test to determine whether the Ordinance violates the Indiana Constitution's prohibition on ex post facto punishment.

a.      *Affirmative Disability or Restraint*

In *Dowdell*, the Indiana Court of Appeals found that a city ordinance, which imposed a

lifetime prohibition on convicted sex offenders from entering the city's public parks "is

unquestionably a restraint." 907 N.E.2d at 566. As the court observed:

> [m]uch of a community's social life occurs in public parks—youth and adult
> sporting events, picnics, community celebrations and events, to name but a
> few—and an ordinance that fully and forever prohibits one from taking part in
> such activities—or from taking a walk in the park—is a real and significant
> restraint.
>
> As for Dowdell specifically, he has a minor son who plays Little League games in
> Jeffersonville's parks, and in the past, Dowdell has been a Little League coach.
> Dowdell would like to attend his son's games. He would also like to enter the
> City's parks without his son to engage in various activities such as adult baseball,
> adult basketball, fishing, golf, watching fireworks over the Ohio River, and taking
> walks with his significant other. The Ordinance constitutes a significant restraint
> because it prohibits Dowdell from engaging in these social and familial activities.

*Id.*

Unlike the ordinance in *Dowdell* (or even the ordinance in *Plainfield*) the Ordinance here

contains restrictions that extend beyond the Plaintiff's access to public parks. It also prohibits

entry into, or loitering within 300 feet of, numerous additional venues: schools; public libraries;

amusement arcades, centers, or parks; video arcades; non private swimming pools; child care

facilities and institutions; public or private athletic complexes; crisis centers or shelters; skate

parks or rinks; youth centers; movie theaters; bowling alleys; scouting facilities; and the Office

of Protective Services. A Child Safety Zone Map [ECF No. 34-1] specific to Hartford City

highlights as restricted areas several schools, parks, daycare facilities, a library, the Girl Scout

House, baseball fields, the 4-H fairgrounds, a bowling alley, and the Department of Child

Services.

The Plaintiff has presented evidence that the Ordinance forced him to refrain from going to the library with his child, entering his child's school, going to Hartford City parks, bowling with his family, attending church where there are separate youth services, joining the YMCA, having his child participate in YMCA activities, and voting at his designated polling place. The Plaintiff maintains that he is no longer able to go to his daughter's school to work with its staff, which is detrimental because she has learning disabilities. The Plaintiff was cited under the Ordinance for waiting as a passenger in his brother's car when it was parked at his brother's house, because it is located across the street from a Hartford City school.[2]

Considered as a whole, the Ordinance imposes substantial affirmative restraints on the Plaintiff that he did not have fair warning of when he committed his offense in 1988, or was convicted in 1993. This factor weighs in favor of treating the effects of the Ordinance as punitive when applied to the Plaintiff.

b.      *Historically Regarded as Punishment*

In *Wallace*, the court found that the burdens imposed by SORA's registration requirements were comparable to the conditions of parole/probation, and therefore, the second factor "favors treating the effects of [SORA] as punitive when applied in this case." 905 N.E.2d at 380–81. Applying this reasoning, the *Dowdell* court reached the same conclusion:

> The *Wallace* court went on to hold that if a statute's provisions are comparable to conditions of supervised probation or parole, then that fact, standing alone, suffices to support a conclusion that the effects of the statute are punitive. A

[2] The Plaintiff was cited under the original definition of loitering.

> prohibition on entering certain types of places is a very common condition of probation or parole. *See, e.g., Fitzgerald v. State*, 805 N.E.2d 857, 867–68 (Ind. Ct. App. 2004) (observing that "[c]onditions of probation which reduce the potential for access to potential victims are reasonable"). We can only conclude, therefore, that the Ordinance's ban on entering City parks . . . is akin to a condition of probation.

907 N.E.2d at 569; *cf. Smith*, 538 U.S. at 101 (concluding that Alaska's reporting requirements did not resemble parole or probation because, unlike parolees, "offenders subject to the Alaska statute are free to move where they wish and to live and work as other citizens, with no supervision").

Given the similarities between Hartford City Ordinance's restrictions and the type of scrutiny and restrictions that attach during supervised release or probation, this factor also weighs in favor of finding that the practical effects of the Ordinance are punitive.

c.    *Scienter Requirement*

"If a sanction is not linked to a showing of *mens rea*, it is less likely to be intended as a punishment." *Wallace*, 905 N.E.2d at 381. In *Wallace*, the court concluded that the scienter requirement was met because almost all of the underlying sex crimes triggering SORA's obligations required a finding of scienter. *Id.*; *see also Gonzalez v. State*, 980 N.E.2d 312, 318 (Ind. 2013) (noting that the vast majority of offenses to which a registration statute applied required a showing of means rea). Here, the Ordinance defines "sex offender" as a person convicted of a sexual offense involving a person under eighteen years of age for which the person is required to "register as a sexual offender under Indiana Law IC 35-42-4 and IC-11-8-8." Ordinance 2008-1, § 8.50.2. The Plaintiff meets the definition of Sex Offender and is subject to the Ordinance's restrictions because he was required to register as a sex or violent offender in

another jurisdiction. *See* Ind. Code § 11-8-8-5(b)(l ) (defining a "sex or violent offender" as "a person who is required to register as a sex or violent offender in any jurisdiction"). It has not been established, in the record before this Court, whether or not the Defendant's offense had a mens rea requirement. The Court is only aware that, because the Plaintiff was required to register in California, he was also required to register when he moved to Indiana. Accordingly, the Court assigns no weight to this factor.

d.      *Promotion of Traditional Aims of Punishment/Retribution and Deterrence*

With respect to this factor, the *Wallace* court concluded that the registration and registry requirements were designed to have deterrent effects and that they promote community condemnation of offenders which includes the traditional aims of punishment. 905 N.E.2d at 382. "[I]t strains credulity to suppose that the Act's deterrent effect is not substantial, or that the Act does not promote 'community condemnation of the offender,' . . . both of which are included in the traditional aims of punishment." *Id.* (internal citation omitted). Likewise, in *Dowdell*, the court held that "[w]e can only conclude that the primary purposes of the Ordinance are deterrence and protection of the community by sequestration of the offender." 907 N.E.2d at 570.

The Sixth Circuit recently addressed this factor in connection with Michigan's Sex Offender Registration Act (SORA), which implements school zone restrictions. It wrote:

> SORA advances all the traditional aims of punishment: incapacitation, retribution, and specific and general deterrence. Its very goal is incapacitation insofar as it seeks to keep sex offenders away from opportunities to reoffend. It is retributive in that it looks back at the offense (and nothing else) in imposing its restrictions, and it marks registrants as ones who cannot be fully admitted into the community. . . . Finally, its professed purpose is to deter recidivism . . . and it doubtless serves

12

the purpose of general deterrence.

*Does #1-5 v. Snyder*, —F.3d—, Nos. 15-1536, 15-2346, 15-2486, 2016 WL 4473231, at *5

(Aug. 25, 2016). However, because many of these goals could also be described as civil and

regulatory, the court gave this factor little weight. *Id.*

Here, the Ordinance states that its purpose is to "promote, protect and improve the health,

safety and welfare of the citizens of Hartford City by creating areas around locations where

children regularly congregate in concentrated numbers." Hartford City, Ind. 2008-1, § 8.50.2.

This purpose, as the Plaintiff admits, is intended to serve legitimate, regulatory purposes. The

Plaintiff argues that it is, however, excessive in relation to its legitimate purpose, and that the

excessiveness factor is the one many courts afford the greatest weight. *See Wallace*, 905 N.E.2d

at 383 ("A number of courts give greatest weight to this factor.") (collecting cases); *see also*

*Flanders v. State*, 955 N.E.2d 732, 751 (Ind. Ct. App. 2011) (according "special weight" to the

seventh factor of whether a sanction appears excessive in relation to the alternative purpose

assigned to it).

Finding that the Ordinance has valid regulatory purposes, the Court will assign this factor

little weight. Whether the Ordinance is excessive in light of its intended purpose is discussed

below.

e.      *Behavior is Already a Crime*

When a "statute applies only to behavior that is already, and exclusively, criminal," it

"supports a conclusion that its effects are punitive." *Wallace*, 905 N.E.2d at 382 (noting that a

criminal conviction and "not merely the fact of the conduct and potential for recidivism"

triggered the Act's obligations). Here, too, this factor weighs in favor of finding that the Ordinance has punitive impact on the Plaintiff.

f.      *Excessive in Relation to the Alternative Purpose Assigned*

This factor requires the Court to consider "whether the [Ordinance] appears excessive in relation to the alternative purpose assigned." *Wallace*, 905 N.E.2d at 383 (quoting *Mendoza-Martinez*, 372 U.S. at 169). In *Wallace*, the court concluded that Indiana's sex offender registry and registration law was excessive given that it "makes information on all sex offenders available to the general public without restriction and without regard to whether the individual poses any particular future risk." *Id.* at 384. In *Dowdell*, the court concluded that the park ban was excessive given that Dowdell had been convicted in 1996 and his duty to register had expired before the enactment of the ordinance. 907 N.E.2d at 570. Although the ordinance in Dowdell contained a procedure potentially allowing an exemption, the court concluded that this procedure was "extremely narrow at best and illusory at worst," and therefore did "not ameliorate the excessiveness of the [o]rdinance." *Id.* at 571.

The Plaintiff's qualifying conviction is from 1993. The Ordinance invokes Indiana's registration statute, Ind. Code § 11-8-8-5, which requires offenders who are under a registration obligation in another state to register when they move to Indiana. *See* Ind. Code § 11–8–8–5(b)(1) (Supp. 2012) (defining a "sex or violent offender" as "a person who is required to register as a sex or violent offender in any jurisdiction"); *Id.* § 11–8–8–19(f) ("A person who is required to register as a sex or violent offender in any jurisdiction shall register for the period required by the other jurisdiction or the period described in this section, whichever is longer.").

An offender may petition to be relieved of the registration requirements based on a claim that the application of the law constitutes ex post facto punishment. Ind. Code § 11–8–8–22. This relief, however, is not available to persons like the Plaintiff who committed their offenses prior to moving to Indiana and were under obligation to be registered in another state. *See Tyson v. State*, 51 N.E.3d 88, 96 (Ind. 2016); *State v. Zerbe*, 50 N.E.3d 368, 369–70 (Ind. 2016).

Thus, the Ordinance does not provide any means by which the Plaintiff can petition for an exemption to no longer be considered a Sex Offender. This is critical to the Court's inquiry. *See Wallace*, 905 N.E.2d at 384 (finding it "significant for this excessiveness inquiry that the Act provides no mechanism by which a registered sex offender can petition the court for relief from the obligation of continued registration and disclosure . . . even on the clearest proof of rehabilitation"); *see also Gonzalez v. State*, 980 N.E.2d 312, 320 (Ind. 2013). In *Gonzalez*, the court determined that, because the alternative purpose of the registration statute was to protect the public from repeat sexual crime offenders, ["t]he degree to which a prior offender has been rehabilitated and does not present a risk to the public is thus integral to our evaluation of whether an extension of the ten-year registration requirement is reasonable in relation to such public protection." 980 N.E.2d at 320 ("The availability of meaningful review of an offender's future dangerousness is therefore germane to the determination of whether a statute's effects are excessive.").

The Ordinance does not provide any particularized risk assessment, which increases the prospect that it exceeds its non-punitive purposes. *See State v. Pollard*, 908 N.E.2d 1145, 1153 (Ind. 2009) (finding that a residency restriction statute was excessive in relation to protecting children from sex offenders where it did "not consider the seriousness of the crime, the

relationship between the victim and the offender, or an initial determination of the risk of re-offending"); *cf. Weems v. Little Rock Police Dep't*, 453 F.3d 1010, 1017 (8th Cir. 2006) (noting that "particularized risk assessment of sex offenders . . . increases the likelihood that the residency restriction is not excessive in relation to the rational purpose of minimizing the risk of sex crimes against minors").

Moreover, because the Plaintiff is designated as a Sex Offender under the Ordinance, he is restricted from all areas designated as Child Safety Zones without regard to particularized risk. There is no mechanism for him to apply for an exception to any of the Ordinance's blanket restrictions in Child Safety Zones based on his particular circumstances. For example, the Plaintiff cannot petition for permission to enter his daughter's school to meet with her teachers, even under conditions that no reasonable person would think create a threat to children or to public safety. As applied to the Plaintiff, this is excessive in relation to the stated purpose.

2.      *Balancing the Factors*

Having weighed the punitive and non-punitive nature of the seven factors as they apply to the Plaintiff and his circumstances, the Court finds that the effects of the Ordinance "are so punitive in nature as to constitute a criminal penalty." *Gonzalez*, 980 N.E.2d at 317 (citing *Wallace*, 905 N.E.2d at 378). The Ordinance imposes substantial affirmative restraints that are historically considered punishment and triggered by a past criminal conviction, and does so in a manner that is excessive in relation to the Ordinance's stated purpose. It violates the Indiana Constitution's prohibition on ex post facto laws because it imposes burdens that have the effect of inflicting greater punishment on the Plaintiff than what could have been imposed in 1988

when he committed the crime. The Plaintiff is entitled to a judgment that applying the Ordinance to him violates Indiana's ex post facto laws.

**B.**     **Vagueness**

"A fundamental principle in our legal system is that laws which regulate persons or entities must give fair notice of conduct that is forbidden or required." *F.C.C. v. Fox Television Stations, Inc.*, 132 S. Ct. 2307, 2317 (2012) (first citing *Connally v. Gen. Constr. Co.*, 269 U.S. 385, 391 (1926) ("[A] statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law"); then citing *Papachristou v. Jacksonville*, 405 U.S. 156, 162 (1972) ("Living under a rule of law entails various suppositions, one of which is that [all persons] are entitled to be informed as to what the State commands or forbids." (internal quotation marks and citation omitted))). This principle "addresses at least two connected but discrete due process concerns: first, that regulated parties should know what is required of them so they may act accordingly; second, precision and guidance are necessary so that those enforcing the law do not act in an arbitrary or discriminatory way." *Id.* (citing *Grayned v. City of Rockford*, 408 U.S. 104, 108–09 (1972)); *Kolender v. Lawson*, 461 U.S. 352, 357–358 (1983). Statutes carrying criminal penalties or implicating the exercise of constitutional rights are subject to a "more stringent" vagueness standard than are civil or economic regulations. *Vill. of Hoffman Estates v. The Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498–99 (1982).

In *City of Chicago v. Morales*, the Supreme Court confronted a vagueness challenge to an

ordinance that prohibited "criminal street gang" members from "loitering" with one another or with other persons in any public place. 527 U.S. 45, 45–46 (1999). As explained by the *Morales* Court, a violation of the ordinance required four predicates:

> First, the police officer must reasonably believe that at least one of the two or more persons present in a "public place" is a "criminal street gang membe[r]." Second, the persons must be "loitering," which the ordinance defines as "remain[ing] in any one place with no apparent purpose." Third, the officer must then order "all" of the persons to disperse and remove themselves "from the area." Fourth, a person must disobey the officer's order. If any person, whether a gang member or not, disobeys the officer's order, that person is guilty of violating the ordinance.

*Id.* at 47 (internal quotation marks and citation omitted).

In a 6-3 ruling, the Court rendered the ordinance unconstitutional, finding that it failed to establish minimal guidelines for law enforcement, particularly as to whether a person is loitering "with no apparent purpose." 527 U.S. at 60–64. The majority specifically found that the definition of "loitering" confers "vast discretion" on the police, is "inherently subjective because its application depends on whether some purpose is 'apparent' to the officer on the scene," and "extends its scope to encompass harmless conduct." *Id.* at 61, 63.

A plurality of the Court—consisting of Justices Stevens, Souter and Ginsburg—also found that the ordinance failed to provide adequate notice of prohibited conduct. *Id.* at 56–60. According to the plurality, "[i]t is difficult to imagine how any citizen of the city of Chicago standing in a public place with a group of people would know if he or she had an 'apparent purpose'" *Id.* at 57, 60 (noting that the ordinance fails "to distinguish between innocent conduct and conduct threatening harm" and, in fact, reaches a "substantial amount of innocent conduct"). To illustrate this point, the Court cited a hypothetical offered by one of the trial courts that invalidated the ordinance:

> Suppose a group of gang members were playing basketball in the park, while waiting for a drug delivery. Their apparent purpose is that they are in the park to play ball. The actual purpose is that they are waiting for drugs. Under this definition of loitering, a group of people innocently sitting in a park discussing their futures would be arrested, while the 'basketball players' awaiting a drug delivery would be left alone.

*Id.* at 57 n.24 (citing *Chi. v. Youkhana*, Nos. 93 MCI 293363 et al. (Ill. Cir. Ct., Cook Cnty., Sept. 29, 1993), App. to Pet. for Cert. 48a–49a). The plurality went on to observe that "state courts have uniformly invalidated laws that do not join the term 'loitering' with a second specific element of the crime." *Id.* at 58 (citing *State v. Richard*, 836 P.2d 622, 623 n.2 (Nev. 1992) (striking down a statute that made it unlawful "for any person to loiter or prowl upon the property of another without lawful business with the owner or occupant thereof")).[3]

In separate opinions concurring in part and concurring in the judgment, Justices O'Connor and Breyer emphasized the ordinance's lack of guidance for law enforcement:

> As it has been construed by the Illinois [Supreme Court], Chicago's gang loitering ordinance is unconstitutionally vague because it lacks sufficient minimal standards to guide law enforcement officers. In particular, it fails to provide police with any standard by which they can judge whether an individual has an "*apparent* purpose." Indeed, because any person standing on the street has a

---

[3] Somewhat controversially, the plurality also noted that "the freedom to loiter for innocent purposes is part of the 'liberty' protected by the Due Process Clause of the Fourteenth Amendment":

> We have expressly identified this "right to remove from one place to another according to inclination" as "an attribute of personal liberty" protected by the Constitution. *Williams v. Fears*, 179 U.S. 270, 274 (1900); *see also Papachristou v. Jacksonville*, 405 U.S. 156, 164 (1972). Indeed, it is apparent that an individual's decision to remain in a public place of his choice is as much a part of his liberty as the freedom of movement inside frontiers that is "a part of our heritage," *Kent v. Dulles*, 357 U.S. 116, 126 (1958), or the right to move "to whatsoever place one's own inclination may direct" identified in Blackstone's Commentaries. 1 W. Blackstone, Commentaries on the Laws of England 130 (1765).

*Id.* at 53 (parallel citations omitted). *But see Doe v. City of Lafayette, Ind.*, 377 F.3d 757, 772–73 (7th Cir. 2004) (noting that it is "quite improbable that Justice Stevens, undertook a fundamental rights analysis," and therefore, the plurality opinion "cannot be read as the Supreme Court's mandating that a right to loiter in *all* places deemed 'public' is a fundamental liberty interest.").

general "purpose"—even if it is simply to stand—the ordinance permits police officers to choose which purposes are *permissible*.

*       *       *

In my view, the gang loitering ordinance could have been construed more narrowly. The term "loiter" might possibly be construed in a more limited fashion to mean "to remain in any one place with no apparent purpose other than to establish control over identifiable areas, to intimidate others from entering those areas, or to conceal illegal activities." Such a definition . . . would avoid the vagueness problems of the ordinance as construed by the Illinois Supreme Court.

*Id.* at 65–66, 68 (O'Connor, J., concurring); *see also id.* at 71 (Breyer, J., concurring) ("The

ordinance is unconstitutional, not because a policeman applied this discretion wisely or poorly in

a particular case, but rather because the policeman enjoys too much discretion in *every* case.").

1.      *The Pre-Amended Ordinance*

The Court must determine whether the Pre-Amended Ordinance—which prohibits

sex offenders from loitering within 300 feet of a Child Safety Zone, and defines the term "loiter"

as "standing, sitting idly, whether or not the person is in a vehicle or remaining in or around an

area"—is unconstitutionally vague.[4]

The Defendant argues that, unlike the ordinance struck down in *Morales*, the Pre-

Amended Ordinance contained express limitations on its application; namely, it only prevented

loitering within 300 feet of a "Child Safety Zone" and only applied to "sex offenders."

According to the Defendant, such limitations "enable[] ordinary people to understand what

conduct is prohibited" and prevent "arbitrary or discriminatory enforcement." (Def.'s Mem. 6,

---

[4]Although the Amended Ordinance mooted the Plaintiff's claim for injunctive relief (as raised on his own behalf and on behalf of the class), the Plaintiff is seeking damages under both versions of the Ordinance.

ECF No. 38.) The Defendant asserts that the Ordinance provided "[r]easonable certainty of the nature and cause of the offense." (Def.'s Reply 2, ECF No. 40.)

In support of the distinction, the Defendant cites to *Grayned*, where the Court considered the constitutionality of a disorderly conduct ordinance that prevented picketing or demonstrating on a public way within 150 feet of a school during certain hours. 408 U.S. at 107. The Court found that, while the question was close, the antinoise ordinance was not impermissibly vague because it was "clear what the ordinance as a whole prohibits," which was "deliberately noisy or diversionary activity that disrupts or is about to disrupt normal school activities." *Id.* at 109, 110–11. The Court acknowledged that "the prohibited quantum of disturbance [was] not specified in the ordinance," but held that it was "apparent from the statute's announced purpose that the measure is whether normal school activity has been or is about to be disrupted." *Id.* at 112. The Court noted that enforcement would not be dependent on completely subjective standards because there had to be a "demonstrated interference with school activities." *Id.* at 114.

The Court thinks that *Grayned*, and the ordinance at issue in that case, are distinguishable from Hartford City's Pre-Amendment Ordinance. The ordinance in *Grayned* prohibited only actual or imminent interference with normal school activity, and, as such, was not a broad invitation to discriminatory enforcement. Here, a sex offender violates the Ordinance if he is "standing, sitting idly, whether or not [he] is in a vehicle" or is "remaining in or around an area" that is within a certain distance of a Child Safety Zone. Ordinance 2008-1, § 8.50.2. There is no indication of how long a person must be standing or sitting, or remaining in an area, before he is in violation of the Ordinance. This subjective standard is not tied to any other objective criteria by which enforcement would be required to rely upon before finding a violation. The prohibited

conduct is not easily measured against normal activities in the community, and does not sufficiently define the line between prohibited and permissible conduct. For example, the YMCA in Hartford City, which is a Child Safety Zone, is within 300 feet of a grocery store and a restaurant. Normal community activity would include sitting at a table in the restaurant, or even sitting in a car waiting for a take-out order. Both restaurants and parking lots are included in the definition of a "public way" where loitering (sitting idly) is prohibited. Whether sitting in the restaurant is a violation of the Ordinance depends on how a police officer would subjectively choose to characterize the purpose. As the Plaintiff notes, even the Defendant's representative, the Chief of Police for Hartford City, testified that the former definition of loiter was dependent for its meaning on the discretion of the police officers charged with enforcing Hartford City's laws. (Mealey Dep. 22–23, ECF No. 34-1.)

In defense of the Pre-Amendment definition of loiter, the Defendant cites to cases from other circuits where criminal defendants made unsuccessful challenges to restrictions on sex offenders' movement, including where they could "loiter." *See United States v. Zobel*, 696 F.3d 558, 575 (6th Cir. 2012) (holding that it was not plain error to impose anti-loitering provision as condition of supervised release for defendant convicted of knowingly coercing and enticing a minor to engage in sexual activity); *United States v. Oliphant*, 456 F. App'x 456, 458–59 (5th Cir. 2012) (upholding against vagueness challenge condition stating that defendant "shall not have access to or loiter near school grounds, parks, arcades, playgrounds, amusement parks or other places where children by [sic] frequently congregate"); *United States v. Burroughs*, 613 F.3d 233, 246 & n. 3 (D.C. Cir. 2010) (upholding against vagueness challenge condition barring defendant from "loiter[ing] in any place where children congregate"). These criminal cases are

not instructive; they do not involve any analysis of the term loitering.

It is true that the proscription's application to a discrete group of people, and to limited areas of Hartford City, made the Pre-Amendment Ordinance less problematic than the anti-loitering ordinance in *Morales*. However, the constraints about what that group of people could do in those areas is still too vague to satisfy due process. The Pre-Amended Ordinance "entrust[ed] lawmaking 'to the moment-to-moment judgment of the policeman on his beat.'" *Smith v. Goguen*, 415 U.S. 566, 575 (1974) (quoting *Gregory v. City of Chi*., 394 U.S. 111, 120 (1969) (Black, J., concurring)). Because the Pre-Amended Ordinance encouraged arbitrary enforcement by failing to describe with sufficient particularity what activity violated the Ordinance, the Court grants summary judgment to the Plaintiff on his claim that the Pre-Amended Ordinance was unconstitutionally vague on its face.

**2.**     *The Amended Ordinance*

The Amended Ordinance replaced the original definition of "loiter" (i.e., "standing, sitting idly, whether or not the person is in a vehicle or remaining in or around an area") with the following:

> Loiter: means remaining in a place or circulating around a place under circumstances that would warrant a reasonable person to believe that the primary purpose or effect of the behavior is to enable a sex offender to satisfy an unlawful sexual desire, or to locate, lure, or harass a potential victim.

Ordinance 2008-01, § 8.50.2, as amended by Ordinance 2015-10.

The amended definition is nearly identical to language upheld in *State v. Showens*, 845 N.W.2d 436 (Iowa 2014), a case involving an anti-loitering statute that subjected sex offenders

to certain "exclusion zones."[5] In upholding the statute, the Iowa Supreme Court construed *Morales* as indicating that "a definition of loitering would be constitutional if it was limited to hanging out *that had an apparently improper purpose*." *Id.* at 444 (citing *Morales*, 527 U.S. at 62; *id.* at 87 (O'Connor, J., concurring)).

> To avoid the constitutional problems noted in *Morales*, the Iowa statute needs to be interpreted as limited to loitering with some apparently improper purpose, as opposed to generalized loitering or loitering with no apparent purpose. Generally speaking, the words of the statute already take us there. Thus, staying in one place is criminally prohibited only if a reasonable person would believe the purpose or effect of the behavior is (a) "to become familiar with a location where a potential victim may be found," (b) "to satisfy an unlawful sexual desire," or (c) "to locate, lure, or harass a potential victim."

*Id.* at 445 (citation omitted). The court concluded, without discussion, that alternatives (b) and (c) (i.e., "to satisfy an unlawful sexual desire" or "to locate, lure, or harass a potential victim") are improper purposes that avoid vagueness issues; and also concluded, with extended discussion, that alternative (a) (i.e., "to become familiar with a location where a potential victim may be found") is also an improper purpose.

To support its ruling, the *Showens* court cited *State v. Stark*, 802 N.W.2d 165 (S.D. 2011), another case involving an anti-loitering statute that prohibited convicted sex offenders

---

[5]In *Showens*, "loitering" was defined as:

remaining in a place or circulating around a place under circumstances that would warrant a reasonable person to believe that the purpose or effect of the behavior is to enable a sex offender to become familiar with a location where a potential victim may be found, or to satisfy an unlawful sexual desire, or to locate, lure, or harass a potential victim.

854 N.W.2d at 440.

from loitering in a "community safe zone."[6] Finding that the statute provided adequate notice of

prohibited conduct, the South Dakota Supreme Court attempted to distinguish *Morales* as

follows:

> First, [the statute] only applies to persons required to register as sex offenders in
> South Dakota, a meticulously defined class of individuals. *Compare Morales*, 527
> U.S. at 62–63. Second, by defining the term "community safety zone," [the
> statute] describes the precise area to which [the statute] applies. The statute does
> not use amorphous terms like "neighborhood" or "locality," which are "elastic
> and dependent upon the circumstances." *See Connally v. Gen. Constr. Co.*, 269
> U.S. 385, 395 (1926) (finding that vagueness in a criminal statute was
> exacerbated by use of the terms "neighborhood" and "locality"). Finally, and
> perhaps most importantly, [the statute] distinguishes between innocent and
> harmful conduct. By requiring that the loitering be "for the primary purpose of
> observing or contacting minors," the South Dakota Legislature limited the
> statute's application to loitering that has an "apparently harmful purpose or
> effect." *Compare Morales*, 527 U.S. at 62.

*Id.* at 171 (parallel citations omitted).

The Plaintiff urges the Court to reject the reasoning of *Showens* and *Stark* because neither

of the statutes upheld in those cases sufficiently distinguished between innocent conduct and

conduct threatening harm. As the Plaintiff points out, in *Doe v. Snyder*, a federal district court

implicitly rejected both *Showens* and *Stark* by striking down an ordinance that prohibited sex

offenders from loitering within 1,000 feet of school property. There, "loiter" was defined as

"remain[ing] for a period of time and under circumstances that a reasonable person would

determine is for the primary purpose of observing or contacting minors." 101 F. Supp. 3d 672,

685 (E.D. Mich. 2015). Relying on the reasoning of the plurality in *Morales*, the district court

stated the following:

---

[6] In *Stark*, "loitering" was defined as "'remain[ing] for a period of time and under circumstances
that a reasonable person would determine is for the primary purpose of observing or contacting minors.'"
802 N.W.2d at 168.

[J]ust as it would be difficult to determine if a Chicagoan were standing in a place with *no* apparent purpose, in many circumstances, it would be difficult—perhaps not as difficult, but difficult nonetheless—to determine if a[n individual] were standing in an exclusionary zone "apparently" for the specific, primary purpose of observing or contacting minors. Conduct such as a registrant starting a conversation with a minor, videotaping a minor, or standing on a playground by himself watching minors, would likely fall within the definition of "loitering" with little room for a registrant to argue ambiguity. However, it remains ambiguous whether a registrant may attend a school movie night where he intends only to watch the screen, or a parent-teacher conference where students may be present. The *Morales* plurality explained that "the purpose of the fair notice requirement is to enable the ordinary citizen to conform his or her conduct to the law [because] '[n]o one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes.'" 527 U.S. at 57 (quoting *Lanzetta v. New Jersey*, 306 U.S. 451 (1939)). [The statute's] present definition of "loiter" is sufficiently vague as to prevent ordinary people using common sense from being able to determine whether Plaintiffs are, in fact, prohibited from engaging in the conduct from which Plaintiffs have refrained.

*Id.* at 686.[7]

The Court cannot see how the ambiguities cited by the litigants and the court in *Doe v. Snyder*, 101 F. Supp. 3d at 686, such as whether a registrant could attend a school movie night where he intends only to watch the screen, or a parent-teacher conference where students may be present, would exist in this case. The Ordinance makes it an offense "for a Sex Offender to knowingly enter a Child Safety Zone." Thus, there is no ambiguity regarding whether entry into

---

[7] With regard to an ex post facto challenge, however, the district court concluded that the law's lifetime registration requirement was not unconstitutional. *Id.* at 705. On appeal, the Sixth Circuit reversed the district court's ex post facto ruling, concluding that the Michigan Sex Offender Registration Act is unconstitutionally retroactive in violation of the Constitution's prohibition on ex post facto punishment. *Snyder*, —F.3d —, 2016 WL 4473231, at *7. Given this holding, the court found it unnecessary to rule on the other issues presented, including the vagueness issue, even though they were "far from frivolous and involve[d] matters of great public importance." *Id.* (declining to address the plaintiff's other challenges because the contested provisions would not apply to the plaintiffs "and anything we would say on those other matters would be dicta").

Here, despite its ex post facto determination, the Court must still decide the due process claim because the matter is certified as a class that includes persons who will visit, live, or work in Hartford City in the future and would be subject to the Ordinance. This class definition includes persons who committed their qualifying sex offense after 2008.

a school is allowed, no matter the purpose. It is not. The only ambiguities that could exist, then, are those pertaining to public ways within 300 feet of a Child Safety Zone.

With respect to those areas, the Ordinance prevents identified Sex Offenders from remaining in a place or circulating around it, but only under circumstances that would warrant "a reasonable person" to believe that the "primary purpose or effect" of remaining in the place or circulating around it was "to enable a sex offender to satisfy an unlawful sexual desire, or to locate, lure, or harass a potential victim." The Plaintiff is concerned that innocent conduct, such as sitting on a bench reading a newspaper, could be construed as loitering if a police officer discerns an improper motive. He claims the law cannot withstand constitutional scrutiny because it would penalize behavior that others may think is a precursor to criminal or prohibited behavior, even though the person has not actually engaged in or attempted such behavior. Thus, he argues, the Amended Ordinance does not tie loitering to an overt act or mens rea.

As an initial matter, the Court notes that due process does not require that the loitering also constitute a separate crime before it can be regulated, only that it involve an "apparently harmful purpose or effect." *Morales*, 527 U.S. at 62–63. The Amended Ordinance attempts to meet this standard. The purpose of the Amended Ordinance is to promote and protect the "health, safety and welfare of children." Ordinance 2008-1, § 8.50.1. To accomplish this, the Amended Ordinance extends beyond generalized loitering. It requires that the circumstances connected with staying in or circulating around a place suggest to a reasonable person that the sexual offender has knowingly selected that location based primarily on its access to children and the fulfillment of desires or taking of action that would be harmful to children. Thus, it contains a specific intent requirement related to a harmful purpose or effect.

However, the Court finds that it remains ambiguous what kind of circumstances would suggest to a reasonable person that the reason a person is loitering is to accomplish one of these prohibited purposes. The Court is particularly concerned with the language pertaining to "satisfy[ing] an unlawful sexual desire," as a determination of whether a person has such an intent requires an assessment of his thoughts. The Ordinance does not provide minimum guidelines to govern law enforcement's determination of what kind of circumstances would suggest that a person's purpose is to satisfy an unlawful sexual desire. That the Ordinance does not sufficiently distinguished between innocent conduct and conduct threatening harm is highlighted by the parties's arguments related to the Plaintiff's example of sitting on a bench reading a newspaper. The Defendant submits that the Plaintiff is misreading the Amended Ordinance, and that passively sitting on the park bench is not punishable because the Ordinance requires that the "primary purpose or effect of the **behavior** is to enable a sex offender to satisfy an unlawful sexual desire, or to locate, lure or harass a potential victim." (Def.'s Reply in Supp. of Cross-Mot. for Summ. J. 4, ECF No. 40.) Thus, the Defendant argues, the person's behavior must actually threaten harm. Therefore, a police officer could not sanction him for having an improper motive because "there is no act or conduct that is to enable a sex offender to satisfy an unlawful sexual desire, or to locate, lure or harass a potential victim." (*Id.*)

However, actions, such as sitting on a park bench, cannot be viewed in a fact barren vacuum. In presenting the scenario, the Plaintiff offered no other facts or circumstances. However, neither did the Defendant when it claimed that it could not be considered a violation of the Ordinance. Whether the act of sitting on the bench is prohibited by the Amended Ordinance is dependent on those other facts. The Defendant claims that those other facts must include the

behavior that the person is engaging in, beyond merely remaining in a Child Safety Zone. The Court's reading of the Ordinance, however, reveals that "the behavior" at issue is the behavior of "remaining in a place or circulating around a place." As currently drafted, the Ordinance's definition of loiter is understood as follows, with the implied language contained in brackets:

> Loiter: means remaining in a place or circulating around a place under circumstances that would warrant a reasonable person to believe that the primary purpose or effect of the behavior [of remaining in a place of circulating around a place] is to enable a sex offender to satisfy an unlawful sexual desire, or to locate, lure, or harass a potential victim.

There is, then, no requirement on those enforcing the Ordinance to point to additional conduct or behavior. They need only point to the circumstances of the loitering, which could be entirely apart from anything the Sex Offender is doing while he remains in a place.

For example, in the scenario where a person is sitting on a bench reading a paper, the apparent purpose might be to enjoy the outdoors and catch up on daily news. However, if it is a time of day when children are congregating, unsupervised, and readily visible, would those circumstances be sufficient to suggest another primary purpose—even if the person sitting on the bench does nothing different? Does the analysis change if the person has no obvious legitimate reason for choosing that bench over one in another, less kid-populated, area? Even if the person sitting on the bench altered his conduct in some way, police would still be required to guess as to his thoughts. A particular smile or look might be thought to suggest "satisfaction" of an unlawful sexual desire. Perhaps crossing his legs would suffice. Certainly, taking additional steps to engage children would put the circumstances over the line into prohibited conduct. The problem is that there is much ambiguity between allowable and prohibited conduct, and no way to prevent those charged with enforcing the Ordinance from engaging in arbitrary and discriminatory

enforcement.

The Court is aware that absolute precision is not the standard. *See Coates v. City of Cincinnati*, 402 U.S. 611, 614 (1971) (explaining that an ordinance was vague, "not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all"); *Ward v. Rock Against Racism*, 491 U.S. 781, 794 (1989) (stating that the due process clause does not demand "perfect clarity and precise guidance"); *see also United States v. Niemoeller*, 2:09-CR-1, 2003 WL 1563863, at *4 (S.D. Ind. Jan. 24, 2003) (The statute "may not provide absolute certainty in every case in which a person seeks to experiment in reaching the outermost boundaries of lawful conduct, but that is not the standard for due process. On its face, the statute gives fair notice to persons of average intelligence of the conduct proscribed."). The Court thinks the portion of the Ordinance referring to unlawful sexual desires is vague in the sense that it specifies no standard of conduct.

Additionally, while attempting to "lure or harass" a child would require some action beyond simply remaining in a place, one of the other harmful purposes that is identified in the Ordinance would not require any such action. The Court finds that whether a person who is remaining within 300 feet of a Child Safety Zone is attempting to "locate" a "potential victim" would invite police officers to guess at the person's intent, potentially without the benefit of any action other than sitting in proximity to children. The Ordinance thus fails to provide adequate guidance and authorizes arbitrary and discriminatory enforcement.

Finally, the Plaintiff challenges the definition's use of the term "circulating around a place." He argues that it has no obvious meaning. As with remaining in a place, circulating around it will only be prohibited if the circumstances would suggest to a reasonable person that the primary purpose is to target children as described in the Ordinance. Thus, to the extent it

remains unclear what circumstances would reasonably suggest these prohibited reasons for remaining in a place, it remains unclear for circulating around a place.

## C.      Injunctive Relief

In his Motion for Partial Summary Judgment, the Plaintiff requests that the Court "[p]ermanently enjoin Ordinance 2008-01." (Mot. 2, ECF No. 34.) The specifics of that request are not clear. If the Plaintiff is asking that the Defendant be enjoined from enforcing the Ordinance against him because it would be an ex post facto punishment, the Court agrees. If the Plaintiff is asking that the Ordinance be permanently enjoined as to all individuals or all class members, the Court does not find a basis for that request. It is only the inclusion of the loitering prohibition that creates a due process violation. The remainder of the Ordinance has not been challenged, and remains intact and enforceable. Thus, to the extent the Plaintiff seeks to permanently enjoin all enforcement of the Ordinance against the class members, that request is denied.

## CONCLUSION

For the reasons stated above, the Court GRANTS IN PART AND DENIES IN PART the Plaintiff's Motion for Partial Summary Judgment [ECF No. 34], and DENIES the Defendant's Cross-Motion for Summary Judgment [ECF No. 37]. Because Hartford City Ordinance 2008-01 violates Indiana Constitution Art. 1, § 24, as applied to the Plaintiff, the Defendant is enjoined from enforcing it against the Plaintiff. The Pre-Amendment Ordinance definition of loiter violated due process. By separate order, the Court will set a telephone status conference to set a

trial to determine the Plaintiff's individual damages. The amended definition of loiter also violates the Fourteenth Amendment, and the Defendant is enjoined from imposing fines for any violation of the loitering prohibition contained in Ordinance 2008-1.

The Court will enter a final judgment outlining the appropriate relief after resolution of the entire case.

SO ORDERED on December 1, 2016.

 s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT